MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY JURISDICTION AND CONSTITUTIONAL RELIEF UNDER THE ALL WRITS ACT, RULE 22 OF THE SUPREME COURT, AND STRUCTURAL PRINCIPLES OF ACCESS TO JUSTICE

**25 CV 4422**

## I. PROCEDURAL RETALIATION AND OBSTRUCTION AT THE UNITED STATES SUPREME COURT

This Court has jurisdiction under the All Writs Act, 28 United States Code § 1651, because the Plaintiff has been denied access to every subordinate federal court, including the District Court of Maryland, the United States Court of Appeals for the Fourth Circuit, and the United States Supreme Court itself. At each level, procedural norms have not simply failed—they have been weaponized to erase record, misrepresent legal posture, and suppress urgent requests for judicial intervention.

The most recent and emblematic example is the Plaintiff's filing under **Rule 22 of the Rules of the Supreme Court of the United States**, which states in full:

> "An application addressed to an individual Justice shall be filed with the Clerk and shall be deemed addressed to the Court. The Clerk will promptly transmit it to the Justice concerned."
> (*Supreme Court Rule 22(1)*)

> The rule is explicit. There is no mention—anywhere—of a requirement that a lower court must first rule on the matter before the application is transmitted to a Justice. The Supreme Court has long recognized that Rule 22 exists precisely to provide emergency access when lower courts delay, obstruct, or become unresponsive.

> On **May 7, 2025**, Plaintiff submitted a second Emergency Application for Injunction under Rule 22. The submission included detailed medical documentation, multiple docket numbers from active litigation in both Maryland and Virginia, and proof that the United States Court of Appeals for the Fourth Circuit had failed to rule on multiple pending injunctions. Plaintiff made clear in her filings that continued delay would result in irreparable harm to a disabled veteran, her five minor children, and her spouse, who is catastrophically disabled. The family is under active threat of eviction, medically at risk, and legally unprotected.

> The filing was returned to her without docketing. No Justice ever saw it.

> After receiving the rejected filing, the Plaintiff called the Supreme Court and spoke with

Clerk Kyle Ratliff. In that conversation, the Clerk repeated the same rationale previously given by another clerk—stating that a ruling from a lower court must be obtained before the Supreme Court could consider the request. He stated, "I can't make any promises," and advised Plaintiff to revise her filing to clarify that she had "already asked for the same relief in the Fourth Circuit," but had not received a ruling.

This statement reflects a fundamental misreading of Rule 22—and more disturbingly, an internal consistency with a previous rejection that was also legally incorrect. It suggests a coordinated procedural standard within the Clerk's Office that has no basis in the published rules of the Court.

Plaintiff had, in fact, already filed for the same relief in the Fourth Circuit under **Case No.** ▓▓▓▓▓—a mandamus petition supported by sealed declarations, judicial misconduct documentation, and evidence of repeated denial of basic procedural rights. That petition has been pending since **April 3, 2025** without any ruling.

When the Supreme Court Clerk refuses to transmit a Rule 22 filing to a Justice—despite the express language of the rule and the presence of a live constitutional emergency—this is no longer administrative discretion. It is structural failure. It is procedural sabotage. And when that sabotage follows the naming of another Clerk in active litigation, it becomes retaliation under the color of judicial administration.

This Court is empowered under the All Writs Act to step in where constitutional access to justice has collapsed, and where no other court—including the Supreme Court—has permitted the matter to be reviewed on its merits.

## II. STRUCTURAL RETALIATION AND JUDICIAL PARALYSIS IN THE DISTRICT OF COLUMBIA, MARYLAND, AND VIRGINIA

The Plaintiff is not simply facing delays in the regional courts of Washington, D.C., Maryland, and Virginia—she is confronting a coordinated pattern of institutional paralysis that rises to the level of constitutional crisis. Every court in this region has either dismissed her filings without review, denied sealing protections for trauma-based declarations, ignored emergency injunctions, or refused to act on mandamus petitions supported by federal law.

Critically, the federal judges assigned to every single one of Plaintiff's cases in the United States District Court for the District of Columbia are **former attorneys from the United States Department of Justice**—the same agency now defending the government entities and funded grantees that Plaintiff is suing. That fact is not incidental. It has created a closed professional network where Plaintiff's filings are repeatedly treated not as matters of law, but as institutional threats.

Plaintiff is suing actors within the Department of Veterans Affairs, federally funded nonprofit grantees,

and judicial officers who have misused their roles under federal funding and authority—the judges who have ruled against her—or refused to rule at all—have uniformly come from the very agency whose power she is challenging. That conflict of interest has produced a chilling effect across the entire judicial region.

In the Fourth Circuit, Plaintiff's emergency writ of mandamus has been pending since April 3, 2025 under Case No. ▇▇▇▇. There has been no ruling. No review. No explanation. While this appeal languishes, eviction threats mount, mental health declines, and Plaintiff's family—already navigating service-connected disability and active trauma—is being pushed to the brink.

In the D.C. Court of Appeals, where Plaintiff sought redress for a D.C. Superior Court judge's failure to rule, the entire bench **declined to vote**. The matter was procedurally closed without a hearing, without review, and without acknowledgement of the sealed constitutional filings already on the record.

This paralysis is not accidental. It is structural. It is retaliation in slow motion, executed through silence, delay, and docket suppression. And it is occurring in a region where nearly every actor—judge, clerk, agency, nonprofit, and counsel—has a shared institutional tie to federal government funding or power.

Plaintiff is not safe litigating in these jurisdictions. She is not protected. Her trauma is not sealed. Her filings are not reviewed. And her rights are not recognized.

The Southern District of New York is not being selected out of convenience. When Plaintiff filed in the United States District Court for the District of Maryland, she told that court it was her final stop. Within three days, Judge Deborah Boardman dismissed the case with prejudice—without a hearing, without protection, and without regard for the emergency constitutional claims before her. Plaintiff is now seeking refuge in this forum not simply as a litigant, but as a survivor. The Southern District of New York, with its history of standing up for civil rights and recognizing structural retaliation, is the last remaining court where Plaintiff believes she has a chance to be heard. If this court fails to act—if it too repeats the silence and denial that has endangered her family—Plaintiff will appeal. And she will continue. Because she is not filing to win. She is filing to stay alive. On Memorial Day, while this country barbecued, Plaintiff fought to preserve her children's housing and to protect the constitutional record of a veteran being erased in real time.

## III. EMERGENCY BASIS FOR JURISDICTION IN THE SOUTHERN DISTRICT OF NEW YORK

This Court has jurisdiction under the **All Writs Act**, 28 U.S.C. § 1651(a), which empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." That authority is not abstract. It is active. It exists to prevent the collapse of constitutional access where every other forum has either failed or refused to act.

The United States Supreme Court has held in *United States v. New York Telephone Co.*, 434 U.S. 159, 174 (1977), that the All Writs Act is properly invoked when necessary to "preserve the existing

jurisdiction of the court. Jurisdiction includes not only the authority to act, but the duty to ensure that access to judicial protection is not defeated by delay, manipulation, or retaliation.

Plaintiff is not asking this Court to override appellate jurisdiction. She is asking this Court to act **in the face of complete judicial paralysis**, where every subordinate forum—including the United States District Court for the District of Columbia, the United States District Court for the District of Maryland, the United States Court of Appeals for the Fourth Circuit, and the District of Columbia Court of Appeals—has refused to provide basic constitutional process. None of these courts have ruled on emergency filings. None have provided sealing orders. And none have acknowledged the constitutional urgency documented through sealed declarations, medical evidence, and housing risk.

This Court has the power—and the obligation—to act under the **Supremacy Clause**, U.S. Const. art. VI, cl. 2, which elevates constitutional protections above regional custom or institutional loyalty. Plaintiff's First Amendment right "to petition the Government for a redress of grievances" and her Fourteenth Amendment right to procedural due process are being destroyed by procedural containment, retaliatory silence, and coordinated jurisdictional evasion.

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court confirmed that federal courts have the power to issue equitable relief against government actors who are violating constitutional rights, even where sovereign immunity might otherwise apply. That principle applies here with full force. Plaintiff is not suing to reverse final judgments. She is invoking the judicial responsibility to **intervene before harm becomes irreversible.**

The delay and denial Plaintiff is experiencing is not neutral. It is discriminatory, traumatizing, and in direct violation of the **Americans with Disabilities Act, Section 504 of the Rehabilitation Act**, the **Fair Housing Act**, and the **First and Fourteenth Amendments.** Her protected status as a disabled veteran, caregiver, rape survivor, and pro se litigant does not diminish her standing. It strengthens the urgency.

Where all other courts have remained silent, this Court must not. Under *Bounds v. Smith*, 430 U.S. 817 (1977), and *Tennessee v. Lane*, 541 U.S. 509 (2004), courts are constitutionally required to provide meaningful access to justice, particularly for disabled litigants. That duty does not expire when other judges look away. It intensifies.

Plaintiff is not requesting relief beyond the Court's power. She is asking this Court to do exactly what the Constitution requires: to hold the line where every other institution has collapsed.

## IV. RELIEF SOUGHT UNDER THE COURT'S INHERENT AND STATUTORY POWERS

Plaintiff seeks no special privilege. She seeks the constitutional minimum: recognition, protection, and the opportunity to live without institutional sabotage. The Court is not being asked to rewrite statutes, but to enforce them—against entities and individuals who have used procedure as a weapon and delay as a shield.

Under its inherent authority and the All Writs Act, this Court may:

- Issue emergency injunctive relief to preserve Plaintiff's access to federally funded housing, services, and disability accommodations;
- Order temporary protective measures to prevent further retaliation while appellate review is pending;
- Grant declaratory relief affirming that Plaintiff's access to judicial remedies has been unlawfully obstructed by federal officers, grantees, and clerks acting under color of law;
- Enter findings of fact that may be certified for review by appellate courts, allowing for continuation of the record without delay, and without further trauma to Plaintiff's family.

The Court's equitable authority is grounded not only in statute but in conscience. In *Chambers v. NASCO*, 501 U.S. 32 (1991), the Supreme Court reaffirmed that federal courts possess the inherent power to prevent injustice and abuse of process. When that abuse comes from within the court system itself—when clerks return sealed trauma declarations without review, when judges refuse to rule, and when the Supreme Court itself declines to docket life-and-death emergency filings—equity is no longer optional. It becomes survival.

Plaintiff is not asking for every case to be resolved here. She is asking that **this** case—this pleading, this truth—be heard. That relief be granted not to finish the story, but to interrupt the erasure.

If this Court grants nothing, the retaliation will continue. The trauma will compound. And the record of judicial betrayal will deepen.

But if this Court acts—if it even dares to say: "We will not be part of this silence"—then it will have already changed the course of a life, a family, and a precedent.

## V. PERSONAL DECLARATION AND FINAL PLEA FOR CONSTITUTIONAL INTERVENTION

There are things I cannot unsee. In 2024, I was removed from medical care at the Department of Veterans Affairs—abruptly and without cause—triggering a collapse across every part of my life. That removal severed my mental health support, blocked my access to trauma-informed care, and led directly to the legal and housing crises I now face. It set in motion the very harm that I am still trying to survive.

During my active duty service, I learned early that whistleblowers are not protected—they are punished. According to the Department of Veterans Affairs Office of Inspector General, over half of veterans who report misconduct face retaliation or discrediting behavior. The Department of Labor confirms that retaliation is the most common complaint among federal whistleblowers. I know this not from research,

but from reality. I lived it. I still live it.

And while retaliation is ongoing, so is suicidal ideation. In fact, according to a 2022 report from the National Veteran Suicide Prevention Annual Report, the suicide rate among veterans is more than **57% higher than non-veteran adults in the United States.** I am one of those veterans. And I am telling you clearly: I do not want to die—but I am constantly fighting the urge to stop fighting.

I am a mother of five children. I am the caregiver to a ~~[redacted]~~ disabled husband. I am a survivor of military sexual trauma. And I am now—openly and verifiably—a whistleblower. The retaliation I am experiencing is not symbolic. It is daily. It is material. It is killing me slowly.

Memorial Day has just passed. For most, it is a day of barbecues and reflection on the dead. But I am still here. I am alive. And I am begging to stay that way. It is easy to memorialize the fallen. It is harder to protect the living. Friendship Place and the Department of Veterans Affairs shared messages online celebrating veterans while actively harming one who is still alive, still pleading, still asking for help. That contradiction is not irony—it is cruelty.

In recent weeks, I came face to face with the man who raped me while I was in service. I saw him walking freely through the District of Columbia, holding his child, wearing his wedding band. I stood across the street, holding mine—trying to survive. I am not asking the courts to punish him. I am asking for protection from a system that has never held him or his institution accountable.

I am scared. I am deeply, viscerally scared. I do not know why no court has acted. I do not understand why no judge has moved to seal my trauma, protect my record, or even ask what is happening. Every clerk, every court, every dismissal without review—it creates a message: you are not real; you do not belong; you will not be heard.

But I am still filing. I am still here. If my filings are repetitive, it is because the trauma is. If my filings are long, it is because the truth is. And if my filings seem emotional, it is because my family is being erased—and I do not know what else to do.

If I have filed something incorrectly, tell me how to fix it. If I have missed a rule, tell me how to cure it. But please—do not punish me with silence. I am not here for recognition. I am here because I am losing everything. And the only thing I have left is this record.

I just want to raise my children. I just want to care for my husband. I just want to breathe in a country I served. But I am trapped. And I need this Court's help to live.

Respectfully submitted,
/s/ Jane Doe
Pro Se Plaintiff

27 may 2025